May it please the court. I am Rebecca Kurz. I'm arguing on behalf of Mr. Maurice Freeman today. The district court concluded that the detention of Mr. Freeman in this case was justified on two legal theories. The first being that the detention was lawful pursuant to the rule of Michigan v. Summers, which says that the police can detain when they are executing a search warrant, may detain the occupants in the immediate vicinity of the premises to be searched. The second legal basis was that this was a valid detention pursuant to Terry v. Ohio because as the police officers approached the vehicle in which Freeman was sitting, they smelled marijuana. I'll address the first conclusion based on Michigan v. Summers first. Michigan v. Summers sets forth a categorical rule permitting the detention of anyone in the immediate vicinity of a premises to be searched. It is not based on an interest-balancing test. In other words, we don't look at did the officers act reasonably in this particular case. We don't ask do we know whether Mr. Freeman was a person. It is an exercise in line drawing. It is strictly that. It is the only rule that I can think of or without probable cause or any reasonable suspicion whatsoever, the detention of wholly innocent people and that detention can last for hours of it at a time if that's how long it takes to execute the warrant. Because of that, I feel that the rule of Michigan v. Summers must always be parked outside of a home that the police were executing a warrant at. The home is on a northeast corner of an intersection 14th and Logan. There were three cars in front of that home, a Buick, a Cadillac, a Pontiac. Mr. Freeman was in the Pontiac, our furthest from the residence. The police chose the parameters of this search. They defined what counts as the immediate vicinity by confining their search warrant request to the residence. They didn't ask to search the cartilage. They didn't ask to search the vehicles associated with the residence, even though both the Buick and the Cadillac were associated with that residence. They belonged to the parents of the suspect that the police were targeting. Can I ask you a question? So the government cited for a different proposition, a case called United States v. Jones. It is 471 F. 3rd 868. It was an opinion written by Judge Grunder. And it's factually, it's nearly identical to this case, but it relies on a protective sweep rationale. So you had a car in front on, you know, on the street, not too far. In fact, it's nearly identical in terms of the distance. And essentially, the officers approached. They couldn't see, I think that this is the one they couldn't see in the windows, but they did a protective sweep. They detained the individuals and ended up finding inculpatory evidence. If you're familiar with the case, that's great. Because it was cited, but I'll throw that to you. I just don't recall reading that case. I read all of them. I'm sorry if I'm not helping you find right now. The protective sweep rationale does not make sense to me. Because we're dealing with something where the sweep, the search itself, the detention must occur within the immediate vicinity. Protective sweep suggests I'm going to go into this residence. Therefore, I need to sweep the residence to make sure there aren't people there who might harm me. Well, that's usually how we do it. But Judge Grunder says that extends to people who might be sitting on the street that could attack the officers and harm them. So there's a safety justification. Then we're going to the officer safety rationale. And I think Bailey gives us some specific language that tells us that probably is not as broad as the government would like it to be. The Supreme Court said the officer safety rationale permits detention of occupants, quote, who are on the premises and able to observe the course of the search. They're focusing on the ability to observe. Counsel, does it matter factually here as I involved here was making trips between the house and the vehicle? I don't feel that that really and that that person was suspected of being armed. I really don't feel that that plays very much at all. I think it's a bit of a read. First of all, the shooting that they're investigating that individual for occurred six months. He was caught on video tape. The police knew him for all this six months. Under that rationale, anyone who spoke to him in that six month period is subject to detention. He comes out of the house, goes back in, pulls away, comes back. Same thing. He comes back out of the house and he picks up a dog, a bag of dog. This was an errand. We don't know the exact what was said between the two individuals in the car and the suspect. But it's quite apparent that it was related to picking up and dropping off dog food and the police later found that bag of dog food. Could the stop be justified in being in the nature of a Terry stop until the marijuana was smelled and at that point there's probable cause for searching? I think the problem with the Terry stop is this. The government basically has four reasons supporting Terry. They say the interaction with the suspect, the odor of the marijuana, that the individuals in the Pontiac were kind of monitoring the police as they approached, and then furtive movement. Okay, so the first one, the interaction with the suspect, that occurred prior to the detention. That's an appropriate factor to consider. The other three occurred after the detention. A Terry stop has to be What do you say? Blocking in of the Pontiac. Blocking in of the vehicle. How exactly was it blocked? Well, I'm referring to pages 33 and 60 of the transcript. Officer McClintick at page 33 admitted that Mr. Freeman could not pull forward. There was an armored vehicle blocking his path. He couldn't back up because there were officers behind him. Page 60, Officer Seymour agreed there were marked and unmarked vehicles behind Mr. Freeman's Pontiac and the Bearcat in front of him, so he couldn't really go in. Those are the two officers who are closest to the vehicle. In their opinions, he is blocked. That's a fourth amendment. Where were they exactly located? Does the record show? That is not apparent. It's not like these cases where the police officer pulls right in front of the car and one pulls right behind. They box him in. It's not a bumper because the Pontiac has the Cadillac. So he can't go forward from the Cadillac. Now presumably, did he pull out and do it? According to these two officers, no. Could he get out of the car and walk away? Well, presumably he could have walked away. Then why was he seized then if he could, if he was free to walk away? He could abandon his vehicle and walk away, but he's still going to be detained. The officers had already made up their mind. They were detaining anyone on the street. That was their testimony. I'm into my rebuttal time. If you don't mind, I'll reserve. Ms. Kersh. Mr. Wagner. May it please the court, David Wagner from the United States. I'd like to start with the threshold issue that was just discussed about whether Mr. Freeman was seized at the point the officers agreed. And I think he wasn't for two reasons. First of all, a reasonable person in his position would not have understood the officers were there particularly. This is not the case like the cases you alluded to, Judge Gallatin, where officers specifically focused on a particular car and blocked in a particular car. Here they were blocking off the whole street with three cars parked. There was no basis for him to believe that essentially the SWAT team that was there to execute the search was there to stop his vehicle. Can a person be seized even when the police weren't specifically targeting them? That's a good question. I think the question has to be what would a reasonable person in that person's situation. So if the officer's behavior would have indicated to a reasonable person and the officers weren't targeting them, I think the answer is probably yes. I think the focus is what would a reasonable person do. I think that's the police were intending to block everything there and they would have had the sense that that would have included them. Well, I don't think that the police, the officers intent, I don't think matters. I think it's what person would have believed who was allegedly seized. But if he saw that he couldn't exit the block because both ends were barricaded, would a reasonable person believe he was seized? Well, in this case there was actually no evidence that he did see the cars blocking. In fact, when the officers approached the vehicle on foot, they saw him looking not at the cars blocking the street but at the house. Seems like it might have been pretty risky to just exit your car and head away without acknowledging the presence of that kind of police presence. That's fair, but I think he could have at least asked, are you here for me? Am I free to go? Until they focused on specifically directed their attention to him. I don't think a reasonable person would have thought they would. But there's a second reason I think that he wasn't seized in this case because seizure requires that the defendant have submitted to the officer's authority. And here we know that when the officers blocked the street, he wasn't, what he was doing was reaching under his security at his gun. He was either concealing it or pulling it out. And either way, I think those actions indicate he wasn't submitting to the officer's authority. I think the point at which he submitted to authority was when the officer said, put your hands up. And at that point he put his hands up. I think that's the point. Can I ask you about the Jones case? You cited it in connection with another case, but it says, I'll just read the passage, although the vehicle was not on the premises covered by the search warrant, it was parked on the public street immediately adjacent so that an armed individual inside could pose a danger to officers on the scene. It was a drug case. It was a search warrant. Now there were a couple of movements where there were movements inside and outside the car and there was darkening of the of the windshield or some of, but the court went on to say, you know, that the protective sweep of the car was reasonably necessary for the officer's personal safety because somebody could emerge from the car and pose a danger to the officers. Yeah, I think, was that the case where the defendant was reaching in and out of the van? He was, yes. Yeah, so I think, I mean, I think that the court's focus in that case was who presents the danger to the officers. And whether you look at it under the rubric of summers, as in people within the immediate vicinity who could pose a danger to the officers or under a protective sweep, you know, people in the essentially the immediate vicinity who pose a danger, I think it comes out the same way. So I think that's, I mean, that's the key issue in this case. The officers knew that someone had been interacting with a suspect who they believed was armed. They knew he had been parked there for over an hour total. They knew, they also knew that there was a second suspect in the armed robbery that the suspect was suspected to have been involved in. So all these factors, I think, gave the officers a legitimate concern for their safety. Well, and that goes back to the Chief's question, which is one thing that's present in this case is not present in the Jones case is you have the occupant of the house repeatedly going out to the vehicle, which, if anything, heightens the danger. You don't have the in and out reaching in and out, but that would heighten the safety concerns that the officers may have that those people in the car connected the people drug dealing inside the house. Absolutely. It heightens both the danger and it also, I think, supports using summers because summers is focused on what's the place to be a known connection to the house. I think supports whether it's under summers, whether it's corrective sweep, whether it's reasonable suspicion, you all get to the same result. It's lawful. I would like to talk briefly about summers because I think the briefs raise the question of whether summers applies just to people who live in the house or found in the house or people in the immediate vicinity. And I think I think the best interpretation of the case is that occupant is a term of part. And I think it's defined in Justice Lee's concurrence in Bailey. He said occupant means persons within the immediate vicinity of the premises to be searched. And in fact, he said the court needs to only ask one question to determine if summers justifies this, which is what was the person seized within the immediate vicinity of the premises? I just don't think there's an argument that Mr. Freeman was not premises searched. His car was parked essentially right in front of the house. He'd been there for a while. The officers... Well, there's an argument. The argument is vicinity doesn't extend to the public street. That's the argument. But I think that's true. But I think that would mean that vicinity is limited to the premises. And that can't be right because the court said the court doesn't say you can seize people on just the premises, but people in the immediate vicinity of the premises, which means it has to be broader than just the premises. How do you think that would reach into somebody in the street, which is essentially right adjacent to the premises? Well, I forget. In that case, was the premises the house? In which case? In Summers or Bailey? I think you're quoting Bailey. In Bailey, it was the house. So then the premises would not include the lawn, the front yard. So that would be the immediate vicinity of the premises. And the question would be whether it extends beyond, say, the yard to the street. I think that's fair. How far do you think it would go? Well, what the Supreme Court told us is that the factors you look at are the lawful limits, premises, which arguably would include the yard, maybe just the house. You also look to whether it's within the line of sight. That's clearly here. He's definitely in the line of sight. And the ease of re-entry. I think that's also meant here. He could have jumped out of his car and run to the house quite easily. So I do think under Summers and Bailey, he was within the immediate vicinity. That was a proper basis to seize him, assuming he was seized, which obviously we disagree with. I'd like to address yet another basis, though, for affirming very briefly, which comes from this court's decision in Martinez-Cortez, which essentially held that there was three reasons that the officer, that was a case where the excursion was backing down the driveway when the officers arrived and they detained the occupants to figure out who. I think it's factually very similar. And this court squarely held in that case that one of the reasons the officers were entitled to detain the people's vehicle was to determine whether they lived in the house. I think that rationale applies equally here. The officers knew that Mr. Freeman had a connection to the actual house, so they were entitled to detain him to figure out whether he lived in the house. And again, this is not a case where... Wait, why is that? Why is that? Were they authorized to seize anybody who lived in the house? Or what's the rationale there? The rationale is they were authorized, they weren't authorized searching the house. And under Summers, they could seize the occupants of the house. So they, I think they necessarily... That's the concern if you've got somebody in the house that could pose a danger while the search takes place, isn't it? And that the reason you detain someone in the house is an occupant? That's one of the reasons for sure. And I think that reason applies equally to people in the house. How far does that go across the street? I think it would probably go across the street. I think it goes at least as far as right in front of the house. I think arguably it would go across the street. Down the block, I'm not sure. Let me ask you this. I know that Jones was a prospective sweep case, but is it immediately adjacent, the same as immediate vicinity? Because that passage I read says, although the vehicle was not on the premises covered by the search warrant, which is the premise, it was parked on the public street immediately adjacent. So if immediately adjacent is the same thing as immediate vicinity, I think Jones may answer it, but I don't know. I mean, is there a difference between those two? I can't think of what the difference would be. They sure seem like the same. But the last point I would end on is that I do think the officers had reasonable suspicion, even before they blocked off the street. They knew that suspects in the case were armed. They knew the person had been waiting in front of the house. You can finish your sentence. Okay. They were also told that there was a possibility that a second armed suspect could be present. I'd ask this court to affirm. Thank you, Mr. Wagner. Ms. Kurz. Briefly, with respect to Martinez-Cortez, in that case, the officers had a search warrant for the house, had a search warrant for the person of the suspect, had a search warrant that included the cartilage, and a warrant that included any vehicle upon cartilage. I really don't, other than the factual similarity that they're stopping a car and detaining someone in a vehicle, given the expansiveness of the warrants that the officers had in that case, I don't feel that it's reasonable. I believe opposing counsel began the argument on the Terry versus Ohio point, indicating that Mr. Freeman would not have realized that he was the subject of the officer's action. Can he be seized if he was not targeted by the police, I believe was your question, and he certainly can't. If your restriction of movement is blocked such that he cannot leave that area of his own volition, they're going to prevent him, then he is seized within the scope of the measure. I think the cases that would be more apropos of that reasoning would be like the stops in airports or a stop on a street where an officer says, hey, can I come ask you a couple questions, a consensual encounter where there is no show of authority that the person submits to. We have three to five, I believe McClintick testified, officers in SWAT gear with assault rifles in a low ready position. Anybody who saw that would not feel free. So he knew he was the target. I'm out of time. Thank you very much. Thank you, Mr. Curtis. Thank you also, Mr. Wagner. The court appreciates the argument you've made to the court today, and we will take the case under advisement.